The Chief Justice delivered the opinion of the court.
Iu this case, an application is made for a writ of mandamus to one of the justices of the peace of the county of Somerset, to require him to issue an execution. The facts are as follow : In an action of debt, after process of summons regularly served and returned, the justice proceeded on the return day, 9th June, 1828, in the absence of the defendant, for which no reason was -assigned, to hear the-cause, and after the examination of several witnesses in support of the state of demand, he rendered judgment for the plaintiff for a certain sum of debt and costs. On the 12th of the same month, the defendant applied to the justice to open the judgment and for a trial on the merits; and made before the justice an affidavit to the following effect: *49 That finding it necessary for him to be from home on the return day of the summons, he requested D. Miller, esq., an attorney at law, to appear for him, that in case the plaintiff should really file anything against him, and •attempt to get a judgment, the cause might be adjourned. That he returned home on the evening of the 10th, about ten o’clock, and learned, to his surprise, that the plaintiff had obtained a judgment against him. That the demand of the plaintiff is unjust and unfounded, and to the best of his knowledge, he is not indebted to the plaintiff, but that the plaintiff is indebted to him in a small amount. On this application, the justice appointed a day for hearing the parties. At which day the attorney referred to by the defendant, made an affidavit before the justice, stating, in substance, that he had not been requested or authorized. to appear for the defendant, as he understood ; and on the contrary, that he had wished the attorney to attend on the day of the return and trial, to observe' the steps taken by the plaintiff, and then return forthwith and tell the same to him; but by no manner of means to enter an appearance, or in any way to intimate the object of his attendance, inasmuch as he intended to take no manner of notice of the process which had been issued; ^against which course the attorney, as he states, very [*39 properly advised him, and adds, that although he went to the place on the day of trial, and after it was concluded, yet it was not for the purpose of appearing or observing what, was done. After hearing the counsel of the parties, and time taken for deliberation, the justice, as appears by an entry on his docket, “ agreed to open the judgment and give the said defendant ’til Monday next to file his pleadings, by him paying the costsor, as he expresses it more fully in a subsequent entry, “ upon the condition that the defendant pay the above $2.47 of costs, on the rendition of the judgment, as also $1.38, the costs on the motion to reconsider.” Nothing farther appears, either by entry on the docket or *50 otherwise, to have been done until the 18th of February, 1829, when the plaintiff appeared before the justice and ' demanded an execution to issue on the judgment, the costs not having been paid by the defendant, although often requested so to do. “ Which demand for execution,” as the justice enters on his docket, “ I took under consideration until the next day, 19th, same instant, when I refused to issue execution, upon the defendant’s coming in and paying said sums of cost to the docket.”
Upon these facts, the plaintiff, in my opinion, is clearly entitled to the mandamus, for which he prays.
The order made by the justice for the opening of the judgment, was conditional, to become absolute on a stipulation to be performed by the defendant, the payment of the costs; and was limited in time until the ensuing 7th day of July. The duty of the defendant was in due season to have sought out the justice, and by the payment performed the condition. Having totally failed, the right of the plaintiff to proceed on the judgment and sue out execution, was fully re-established, and stood as if the order had not been granted. Stansbury v. Durell, 1 John. cases, 396; Pugsley v. Van Alen, 8 John. Rep. 352. Although the plaintiff might have legally claimed an execution on the 8th of July, his forbearance to demand it until the ensuing February, neither destroyed nor weakened his right. The justice, in compliance with his duty, should have issued it when required; nor should he afterwards have received the costs, or made the subsequent payment the reason of his refusal. What might have been the effect of. payment of the costs to the *40] justice before the plaintiff sought *the execution, we need not enquire. The right of the plaintiff to the execution was complete, when demanded; and if the justice thought proper to take time to consider the subject, he ' should have decided as the facts were when he took the case under advisement, and not brought a prejudice on the plaintiff, or allowed the defendant an opportunity to escape *51 from the consequences of his neglect. Without then bringing into question the power of the justice to open the judgment, or the merits of the affidavits, the plaintiff has established his title to the execution, and to a mandamus requiring the justice to issue it. We might, therefore, forego any further inquiry. But as another topic was discussed on the argument, and is fairly raised, we shall perhaps perform a profitable service by using the occasion to express our views of it.
The power and authority of a justice of the peace to open .a judgment regularly obtained, is directly involved in the present application; for if, as insisted by the counsel of the plaintiff, a justice has no such power or authority, the propriety of the writ of mandamus is obvious, without reference to the ground of allowance already mentioned. T find, as I apprehend, the doctrine fully settled in this court, that a justice of the peace may not sot aside or open, at the instance of the defendant, a judgment regularly obtained, because the defendant was absent, and therefore undefended, from accident, surprise, mistake, or fraudulent misrepresentations of the plaintiff.
The power of a justice of the peace to set aside the verdict of a jury, received the attention of this court at a very early period after the passing of the act of 1798, in which was introduced a clause not found in any of the preceding acts, giving in general terms to the courts for the trial of small causes, “ all such power as is usual in courts of record of this state.” In Foreman v. Murphy, Penn. 1024, Kirkpatrick, C. J. said, he came on the bench about the time the act passed. Soon after which, the question was brought before the court, and although he had strong doubts on the subject and inclined the other way, yet his brethren, three in number, the court then being composed of four judges were all of them clearly against the practice, and prohibited it by mandamus, and such had been the understanding on the subject ever since. This case of Foreman v. Murphy arose *52 *41] on a *motion for a mandamus to a justice, who had refused to render judgment on the ground that the verdict was against evidence. And the writ was granted by the opinion of the whole court. Pennington, J., said, “ I have never entertained a doubt on the subject. On a full investigation of the question, I am clearly of opinion, that the-exercise of this authority by the justices is against law. It-can only be entrusted with safety to intelligent courts, acting .under known established rules, and governed by a. settled course of adjudications. It is also against public policy. To invest 300 courts in the state with the power of granting new'trials whenever the justice is dissatisfied with the verdict, would lead to-endless litigation, be attended with confusion and uncertainty, and often with oppression and injustice.” In Smith v. Snowhill, at September term, 1816, an alternative mandamus, and at February term, 1817, a peremptory mandamus was directed tó.a justice of the peace, requiring him to render judgment and issue execution on a report of referees, which he had ordered to be set aside, because the referees had received illegal testimony. The cases thus far adverted to, are not, it is true, expressly in point, as they are not instances of the opening of judgments. They serve, however, to prove that the clause of the first section on which the controversy must depend, is to be understood in a restricted, and not in ah unqualified sense. And the argument ’ from analogy is entitled to-weight; for if the power of setting aside a verdict is not. given because of the difficulty and .hazard of its exercise, neither is the power of opening or setting aside a judgment,, which, while perhaps of equal importance, is more arduous,, because less, clearly defined, less plainly settled, and more dependent on sound discretion. In Lowring v. Ramsey,. Penn. 630, judgment had been obtained before the justice against the defendant in his absence induced by an assurance of the plaintiff that the trial would not take place, and that he need not attend. On certiorari, the judgment was, *53 for this cause, reversed. The court said, “ It is true, that surprise is not strictly assignable as error. If the justice’s court was a court proceeding according to the course of the ■common law, the application ought to have been made to that court. But the policy and legal propriety of the justices opening their judgments on the ground of surprise, may be fairly questioned, and in practice it is never *done. [*42 'The justice of this case calls for a remedy which can nowhere be found, but in the general superintending authority of this court, over inferior jurisdictions. We, therefore, apprehend that we shall be in the due exercise of our legal authority in declaring the proceedings below null and void.”
In Truax v. Roberts, 2 South. 288, the court set aside the judgment when the defendant had been prevented from attending on the trial by being confined for a contempt of another court. In several other cases not reported, this court, on certiorari, has sot aside judgments obtained in the absence of the defendant, caused by accident or mistake, or by delusive conduct of the plaintiff'. These cases, it may be .said, do not directly deny to the justice the power of opening the judgment. They are, nevertheless, entitled to full respect, as cases in point. For they rest on the principle, that the justice has not the power. In the reported cases, and in some, if not all, the others, no application had been made to the justice. Now, it is clear, that if the justice possessed the authority to afford relief, by the opening of the judgment, this court would not interfere, unless previous application had been made to him, and had been by him illegally refused. And serious doubt would then arise whether this court, acting only as in a matter of error, •could interfere; since the opening of a judgment, like the granting of a new trial, would in a great measure be governed by the sound discretion of the court, and which, for that reason, like the granting or refusal of a new trial, might not be the subject of an assignment of error.
We have here then, a course of precedents which all must .admit to have strong, if not conclusive, reasons to support *54 them ; which, no one can demonstrate to be, in the language-of Blackstone, “ manifestly absurd or unjust.” They have been acquiesced in by the parties, since no appeal has been made. They have been acquiesced in by the legislature,, since no declaratory or remedial law has been passed. We are, therefore, to follow them without a rigid scrutiny into-their original or abstract merits. The remark of 0. J. Kirkpatrick, in Foreman v. Murphy,.was wise. “I do not feel inclined to overrule the authority of a settled course of adjudications.”
Let an alternative mandamus issue.